EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Liquids and Water Transport<br><br>Recurrido<br><br>v.<br><br>Autoridad de Acueductos y Alcantarillados de Puerto Rico<br><br>Peticionaria<br><br>Negociado de Transporte y Otros Servicios Públicos<br><br>Recurrida | Certiorari<br><br>2026 TSPR 73<br><br>218 DPR ___ |

Número del Caso: CC-2025-0366


Fecha: 6 de julio de 2026


Tribunal de Apelaciones:

    Panel VI


Representante legal de la parte peticionaria:

    Lcdo. Ferdinand Ocasio


Oficina del Procurador General:

    Hon. Omar Andino Figueroa
    Procurador General

    Lcdo. Frank A. Rosado Méndez
    Subprocurador General

    Lcda. Mariela Reyes Huertas
    Procuradora General Auxiliar


Materia: Derecho Administrativo - Facultad del Negociado de Transporte y Otros Servicios Públicos para suplir motu proprio la carga probatoria correspondiente al solicitante al atender una solicitud de aumento de tarifas al amparo de la Ley de Servicio Público.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Liquids and Water Transport<br><br>Recurrido<br><br>v.<br><br>Autoridad de Acueductos y Alcantarillados de Puerto Rico<br><br>Peticionaria<br><br><br>Negociado de Transporte y Otros Servicios Públicos<br><br>Recurrida | CC-2025-0366 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada Rivera Pérez.

En San Juan, Puerto Rico, a 6 de julio de 2026.

Nos corresponde determinar si el Negociado de Transporte y Otros Servicios Públicos (Negociado), puede suplir *motu proprio* la carga probatoria que incumbe al solicitante, al atender una solicitud de aumento de tarifas al amparo de la Ley de Servicio Público de Puerto Rico, Ley Núm. 109 de 28 de junio de 1962, según enmendada, 27 LPRA sec. 1001 *et seq*. Por los fundamentos que se exponen a continuación, resolvemos en la negativa.

**I.**

Comparece la Autoridad de Acueductos y Alcantarillados de Puerto Rico (AAA) y nos solicita la revisión de una *Sentencia* emitida por el Tribunal de Apelaciones, mediante

la cual confirmó una *Resolución y Orden* emitida por el Negociado, entidad adscrita a la Junta Reglamentadora de Servicio Público (Junta Reglamentadora o Junta). En virtud de dicha determinación, la agencia concedió un aumento de las tarifas de transporte de agua en tanque solicitado por Liquids and Water Transport (Liquids o Concesionario).

El 2 de julio de 2024, Liquids presentó, mediante la plataforma digital del Negociado, una solicitud de aumento de tarifas a la que se le asignó el núm. 66601.[1] Junto con la petición se anejó un documento, con fecha del 27 de marzo de 2023, identificado como *Solicitud de revisión de tarifas para el acarreo de agua potable en camiones tanque*, el cual fue firmado por los siguientes concesionarios: Liquids y Dávila Transport.[2] Sin embargo, del *Informe del Oficial Examinador*, que se discute más adelante, surge que presuntamente con la petición se anejó un documento identificado como *Solicitud de revisión de tarifas para el acarreo de agua potable en camiones tanque,* el cual fue firmado por los siguientes concesionarios: DTI Logistics, Transporte Rosario, Inc. (Transporte Rosario) y el Sr. Richard Guevárez Díaz (señor Guevárez).[3] En lo pertinente, mediante la solicitud núm. 66601, Liquids marcó el encasillado intitulado '*Solicitud de Aumento de Tarifas que detalle los servicios para los cuales se solicita el aumento de tarifas, las tarifas actuales, las tarifas propuestas y la justificación para el aumento*'.

---

[1] Ap., págs. 57-59.
[2] Ap., págs. 60-62.
[3] No se radicó evidencia sobre este particular.

Mientras que en el documento que adjuntó a su solicitud peticionó la revisión de "las tarifas temporáneas que han regido nuestra industria por los pasados años […]".[4]

Así las cosas, el 11 de septiembre de 2024, el Negociado publicó un aviso público. En lo pertinente, el aviso indicó lo siguiente:

> El Negociado […] se propone evaluar la Solicitud de Aumento de Tarifas número 66601 y la Solicitud de Aumento de Tarifas 66291, radicadas ambas en la plataforma [del Negociado] […].
>
> **La Solicitud de Aumento de Tarifas número 66601 solicita una revisión y posterior aumento de las tarifas aplicables al servicio de transporte de agua en tanque** a través de la isla de Puerto Rico a los fines de **determinar si procede la aprobación de unas Tarifas Temporeras.**
>
> La Solicitud de Aumento número 66291 solicita la revisión y posterior aumento de las tarifas aplicables al servicio de transporte terrestre de pasajeros ofrecido por concesionarios autorizados por el Negociado […].
>
> ..    .    .    .    .    .    .
>
> La Solicitud de Aumento de Tarifas número 66601 y la Solicitud de Tarifas número 66291 estarán disponibles para evaluación durante los días y horas laborables en la Oficina Central del Negociado […].[5] (Negrillas suplidas).

Asimismo, el 25 de septiembre de 2024, se le envió por correo electrónico a la AAA una notificación de cortesía informándole sobre la solicitud radicada, el aviso publicado y la fecha designada para la vista pública.

Eventualmente, el 1 de octubre de 2024 se celebró la vista pública convocada. A esta comparecieron Transporte Rosario y el señor Guevárez. Como parte de su deposición, **Transporte Rosario sometió un documento identificado como** *Pedido contra contrato emitido por la AAA* el 21 de agosto de 2012. Por su parte, el señor Guevárez no depuso. **Además,**

---

[4] Ap., pág. 60.
[5] Ap., pág. 77.

**Liquids no compareció**. Finalmente, no se recibieron comentarios ni solicitud para deponer, a través de la dirección de correo electrónico provista por el Negociado.

Más adelante, el 21 de noviembre de 2024, la Lcda. Ileana Díaz Rosado, **Oficial Examinadora del Negociado (Oficial Examinadora)**, rindió un *Informe del oficial examinador* **(Informe)**. En este, aludió a un estudio **intitulado *Revisión de tarifas de acarreo de agua en Puerto Rico 2024***, realizado en abril de 2024 por la firma Advantage Business Consulting a solicitud del Negociado.[6] Según el informe, el estudio recomendó el aumento de las tarifas. En vista de lo anterior, recomendó el aumento de las tarifas de transporte de agua en tanque, mediante la adopción de **tarifas temporáneas** de acuerdo con lo recomendado por el aludido estudio.

Posteriormente, el 2 de diciembre de 2024,[7] el Negociado notificó una *Resolución y Orden*. Mediante esta, acogió la recomendación de la Oficial Examinadora. En específico, expresó lo siguiente:

> Por entender que redunda en provecho público, se concede un aumento de las tarifas de transporte de agua en tanque **mediante la adopción de tarifas temporáneas** de acuerdo con lo recomendado en el estudio intitulado *Revisión de Tarifas de Acarreo de Agua en Puerto Rico 2024* […].[8] (Negrillas suplidas).

Esta determinación se le notificó a la AAA, a la Oficina de Abogados Examinadores y a **Liquids**. Inconforme, el 27 de diciembre de 2024,[9] la AAA presentó ante el Tribunal de

---

[6] Ap., págs. 79-106.
[7] Ap., págs. 42-47.
[8] Ap., pág. 43.
[9] Ap., págs. 23-41.

Apelaciones un recurso de revisión administrativa y planteó los siguientes errores:

> Erró el Negociado de Transporte y otros Servicios Públicos al emitir una Resolución y Orden para la Solicitud Núm. 66601 a pesar de que el Querellante no cumplió con el peso de la prueba para que se autorizara el aumento.

> Erró el Negociado de Transporte y otros Servicios Públicos al aprobar una tarifa temporánea como parte de la Resolución y Orden para la Solicitud Núm. 66601.

> Erró el Negociado de Transporte y otros Servicios Públicos al aprobar un aumento tarifario sin contar con el aval de la Junta de Supervisión Fiscal.

Con el beneficio de la comparecencia del Negociado,[10] el 22 de abril de 2025,[11] el Tribunal de Apelaciones notificó una *Sentencia*, por medio de la cual confirmó la determinación recurrida. El foro intermedio concluyó que no procedía su intervención, debido a que la determinación revisada del Negociado se emitió dentro de los parámetros de su sana discreción, conforme al debido proceso de ley y a la sustancial evidencia no controvertida que surge del expediente. Destacó que el Negociado notificó adecuadamente y brindó oportunidades para participar del proceso a la parte interesada, las cuales la parte recurrente no utilizó. Asimismo, determinó que el promovente cumplió con el peso de la prueba y que la aprobación de las tarifas estaba supeditada al aval de la Junta de Supervisión Fiscal. En consecuencia, al no evidenciarse actuación arbitraria, ilegal o irrazonable, resolvió que los errores señalados no se cometieron y sostuvo la determinación administrativa.

---

[10] Ap., págs. 107-124.
[11] Ap., págs. 1-10.

En desacuerdo, el 7 de mayo de 2025,[12] la AAA solicitó una reconsideración, la cual fue denegada mediante *Resolución* notificada el 20 de mayo de 2025.[13]

Inconforme, el 20 de junio de 2025,[14] la AAA acudió mediante un recurso de *certiorari* ante este Tribunal y presentó los señalamientos de error siguientes:

> **PRIMER ERROR:** Erró el Tribunal de Apelaciones al confirmar la Resolución y Orden para la Solicitud Núm. 66601 del Negociado de Transporte y otros Servicios Públicos otorgándole total deferencia a dicha agencia a pesar de que el Querellante no cumplió con el peso de la prueba para que se autorizara un aumento.

> **SEGUNDO ERROR:** Erró el Tribunal de Apelaciones al otorgar total deferencia al Negociado de Transporte y otros Servicios Públicos en su determinación de aprobar una tarifa temporánea como parte de la Resolución y Orden para la Solicitud Núm. 66601.

Por su parte, el Negociado presentó su alegato el 16 de enero de 2026. Contando con la comparecencia de ambas partes, y habiendo expedido el recurso, nos encontramos en posición de resolver.

## II.

### A. Deferencia administrativa

Al aprobarse la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 LPRA sec. 2101, et seq. (derogada), las resoluciones administrativas eran revisadas bajo el estándar dispuesto en la Sección 4.6 de esta ley, 3 LPRA sec. 2175. En cuanto al estándar de revisión

---

[12] Ap., págs. 125-133.
[13] Ap., págs. 21-22.
[14] El término venció el 19 de junio de 2025. Ese día fue feriado.

sobre las determinaciones de derecho, la Sección 4.6 disponía:

> Las conclusiones de derecho merecerán deferencia judicial, sin menoscabo de la función de revisión judicial. Confrontado con una solicitud de revisión judicial el tribunal tomará en consideración los siguientes principios: (a) presunción de corrección; (b) especialización del foro administrativo; (c) no sustitución de criterios; (d) deferencia al foro administrativo; y, (e) la decisión administrativa sólo se deja sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de prueba sustancial en la totalidad del expediente.

No obstante, dicho lenguaje fue sustancialmente modificado por la Asamblea Legislativa al promulgar la Ley Núm. 38-2017, según enmendada, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU). En su Sección 4.5 se dispuso que el alcance de la revisión judicial sería el siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. **Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal**. (Negrilla suplida). 3 LPRA sec. 9675.

A la luz de este nuevo marco normativo, la jurisprudencia reciente ha precisado el alcance de dicha norma. En ese sentido, en *Vázquez et al. v. DACo*, 2025 TSPR 56, 216 DPR __ (2025), enmarcamos el alcance de la revisión judicial de las determinaciones administrativas. En lo pertinente, dictamos que los foros revisores "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, **será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos**. No guiados por la deferencia automática […], sino que por los mecanismos interpretativos

propios de [los tribunales]". (Negrillas suplidas) Íd., pág. 17.

Es decir, el estado de derecho vigente no permite que un órgano revisor confirme una decisión administrativa de forma mecánica, amparándose exclusivamente en la deferencia administrativa. Las decisiones administrativas deben ser objeto de una revisión integral y, de existir errores de derecho, estos deben ser atendidos con el mayor rigor.

Además, en nuestra jurisprudencia **no se ha reconocido grado alguno de inmunidad a la actividad administrativa**. Véase *Misión Ind. de P.R. v. J.P. y A.A.A.*, 142 DPR 656, 673 (1997). En ese contexto, desde tiempo inmemorial se ha cimentado el deber y responsabilidad del Poder Judicial "to say what the law is." *Loper Bright Enters. v. Raimondo, supra*, pág. 369 citando a *Marbury v. Madison*, 5 US 137, 177 (1803). De esta manera, al evaluar una determinación de la agencia, corresponde al tribunal ser el último interprete de las conclusiones de derecho. Véase *SEC v. Sloan*, 436 US 103, 118 (1978). Por consiguiente, la invocación aislada de la deferencia administrativa, por sí sola, no subsana los errores del dictamen recurrido ni, mucho menos, satisface la política judicial de que los casos se diluciden en sus méritos. Véase *Mitsubishi Motor v. Lunor y otros*, 212 DPR 807, 847 (2023) citando a *Ramírez de Arellano v. Srio. de Hacienda*, 85 DPR 823, 829 (1962); *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 264 (2021); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 124 (1992).

En ausencia de impedimento doctrinal, procede examinar los estatutos y reglamentos aplicables a la controversia del caso de marras.

B. *Ley de Servicio Público de Puerto Rico*, **Ley Núm. 109 de 28 de junio de 1962, según enmendada, 27 LPRA sec. 1001** *et seq*.

Mediante la aprobación de la *Ley de Servicio Público de Puerto Rico*, Ley Núm. 109 de 28 de junio de 1962, según enmendada, 27 LPRA sec. 1001 *et seq*. (Ley Núm. 109-1962), se creó la Comisión de Servicio Público (Comisión) como una agencia administrativa investida de los poderes y prerrogativas necesarias para cumplir con el propósito legislativo de regular los servicios públicos en beneficio de los intereses de la comunidad en general. Cónsono con ello, la Asamblea Legislativa concedió a la Comisión poderes de reglamentación y fiscalización respecto a toda la transportación pública terrestre, marítima y por aire, entre otras.[15] Posteriormente, mediante la *Ley de Ejecución del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico*, Ley Núm. 211-2018, según enmendada, los poderes y facultades de los cuales estaba revestida la Comisión de Servicio Público (Comisión) fueron transferidos al Negociado. Cabe destacar que el referido ente se encuentra adscrito a la Junta Reglamentadora de Servicio Público (Junta), creada en virtud de la *Ley del Nuevo Gobierno de Puerto Rico*, Ley Núm. 122-2017, 3 LPRA sec. 8841 *et seq*. (Ley

---

[15] Véase *Ley de Transformación Administrativa de la Comisión de Servicio Público*, Ley Núm. 75-2017, en la medida que esta enmendó la Ley Núm. 109-1962.

Núm. 122-2017). No obstante, en virtud de la Ley Núm. 109-1962, *supra*, **el Negociado continúa como el ente que ostenta las facultades para reglamentar la industria del transporte en Puerto Rico.**

Como corolario de dicha delegación, el Art. 16 de la Ley Núm. 109-1962, 27 LPRA sec. 1103, prescribe el procedimiento que debe seguir en el ejercicio de esas facultades y en lo pertinente, dispone:

> (a) **Debe solicitarse del NTSP [Negociado] que se apruebe por [e]ste toda tarifa nueva o modificación de tarifa.** El NTSP [Negociado] deberá publicar un aviso en un periódico de circulación general en Puerto Rico, así como en su portal de internet, y ofrecer a todas las partes afectadas una oportunidad adecuada de ser oídas en los procedimientos que llevase a cabo para determinar si procede o no la solicitud. **El NTSP [Negociado] podrá dictar la orden que fuere adecuada como si se tratara de un procedimiento originado de acuerdo con el Artículo 17 de esta Ley.**[…]
>
> (c) **En cualquier procedimiento tarifario, la compañía de servicio público o porteador por contrato concernido, tendrá el peso de la prueba.** (Negrillas suplidas).

Por su parte, el Reglamento Núm. 9358 de 7 de febrero de 2022, denominado el *Código de Reglamento del Negociado de Transporte y Otros Servicios Públicos*, en el Tomo II, Capítulo III, Subcapítulo IX, secs. 3.284-3.288, recoge los mismos principios de la Ley Núm. 109-1962, *supra*, y prescribe lo siguiente:

> 3.284 Debe solicitarse del Negociado que se apruebe por [e]ste toda tarifa nueva o modificación de tarifa. **De acogerse la solicitud de tarifa nueva, o modificación de tarifa, se tiene que incorporar al presente Código de Reglamentos mediante enmienda al mismo.** El NTSP [Negociado] deberá publicar un aviso en un periódico de circulación general en Puerto Rico, así como en su portal de internet, y ofrecer a todas las partes afectadas una oportunidad adecuada de ser oídas en los procedimientos que llevase a cabo para determinar si procede o no la solicitud.
>
> 3.285 La tarifa solicitada no regirá durante el transcurso de dicho procedimiento, salvo sea una Tarifa Temporánea.

3.287 **En cualquier procedimiento tarifario, el concesionario concernido tendrá el peso de la prueba, salvo sea un procedimiento iniciado por el propio Negociado.**

3.288 La Solicitud de Aumento de Tarifas deberá presentarse a través de la Plataforma Digital, pagando el arancel correspondiente. **La solicitud deberá detallar los servicios para los cuales se solicita el aumento de tarifas, las tarifas actuales, las tarifas propuestas y la justificación para el aumento. El Negociado podrá ordenar a los peticionarios que paguen los gastos y honorarios por servicios profesionales y consultivos incurridos en las investigaciones,** audiencias o cualquier otro procedimiento que se lleve a cabo con relación al ajuste de tarifas solicitado. (Negrillas suplidas).

El marco estatutario antes citado reconoce dos tipos de procedimientos tarifarios ante el Negociado, a saber: los procedimientos tarifarios instados por el Negociado y **las solicitudes de aumento tarifario de los concesionarios.** Asimismo, establece las garantías mínimas del debido proceso de ley cuando el Negociado atiende una *solicitud de aumento de tarifas*. En lo pertinente al caso de marras, dispone que: (1) la solicitud deberá detallar los servicios para los cuales se solicita el aumento, las tarifas actuales, las tarifas propuestas y la justificación correspondiente; y (2) **el peso de la prueba recaerá sobre el concesionario concernido, salvo que se trate de un procedimiento iniciado por el propio Negociado.**

Cónsono con lo anterior, el Art. 17 de la Ley Núm. 109-1962, 27 LPRA sec. 1104, establece el deber del Negociado de brindar a las partes afectadas la oportunidad de ser oídas y les reconoce legitimación activa para impugnar aquellas tarifas y decisiones administrativas que se adopten en contravención de la ley y reglamentos.

**C. Tarifas temporáneas bajo la Ley Núm. 109-1962, *supra, y* el Reglamento Núm. 9358.**

La Ley Núm. 109-1962, *supra*, dedica el Art. 19, 27 LPRA sec. 1106, a la definición y aplicación de las tarifas temporáneas. Al respecto, establece lo siguiente:

(a) **En cualquier procedimiento que envuelva la razonabilidad de las tarifas de cualquier compañía de servicio público,** el NTSP [Negociado] podrá, **luego de dar a las partes una oportunidad adecuada de ser oídas,** en aquellos casos en que a su juicio fuere en provecho público, **fijar tarifas temporáneas que serán puestas en vigor por la compañía de servicio público concernida durante el tiempo que se requiriese para la determinación de las tarifas que deben en definitiva autorizarse o prescribirse.** Cuando a su juicio, las condiciones prevalecientes en una empresa sean tales que requieran acción inmediata, el NTSP [Negociado] podrá obviar el requisito de dar a las partes una oportunidad adecuada de ser oídas y hacer sus determinaciones de acuerdo a la información en su poder.

(b) **Las tarifas temporáneas así prescritas estarán en vigor hasta la resolución definitiva del procedimiento tarifario.** Si posterior a su fijación, el NTSP o en revisión la JRSP o el Tribunal de Apelaciones determinase que las tarifas temporáneas fijadas por el NTSP no fueron justas y razonables, permitirá a la compañía de servicio público concernida recuperar por medio de un aumento temporero sobre las tarifas definitivas, la cantidad que representa la diferencia entre el ingreso bruto obtenido por razón de las tarifas temporeras y el ingreso bruto que hubiera obtenido de haberse fijado unas tarifas temporeras justas y razonables. (Negrillas suplidas).

Del estatuto antes citado se desprende que existen dos mecanismos para la aprobación de tarifas temporáneas. El primero comprende la vía ordinaria, que incluye los procedimientos en los que se evalúa la razonabilidad de las tarifas de las compañías de servicio público. En tales casos, el Negociado podrá aprobar tarifas temporeras siempre que se les brinde a las partes la oportunidad de ser oídas y se cumpla con la carga probatoria. Por otro lado, de manera extraordinaria, el Negociado podrá aprobar tarifas temporáneas sin cumplir con dicho requisito, si a su juicio, determina que las condiciones prevalecientes **en una empresa requieren acción inmediata.**

Es decir, los estatutos antes citados reconocen la facultad del Negociado para implementar tarifas temporáneas, cuando así lo ameriten las circunstancias y cumplan con el debido proceso de ley aplicable a las distintas modalidades. Tales tarifas se caracterizan por su naturaleza provisional, en tanto permanecen vigentes únicamente hasta la resolución final del procedimiento tarifario.[16] No obstante, su eficacia está sujeta al proceso adjudicativo ante la agencia y la ulterior revisión del Tribunal de Apelaciones. Confirmada la tarifa por dicho foro y enmendado el reglamento, el procedimiento administrativo queda concluido. En consecuencia, por imperativo de su definición estatutaria, las tarifas temporeras no pueden revestir carácter permanente, pues **solo cabe hablar de tarifas permanentes cuando se enmienda el reglamento del Negociado y estas se incorporan como tarifas oficiales.**

**D. Actos nulos y el debido proceso de ley.**

Sabido es que "los reglamentos crean un estado de derecho que protege a los que actúan bajo sus disposiciones; y que un reglamento o actuación administrativa claramente en conflicto o en contra de la ley es nulo". (Cita omitida). *P.S.P. v. Com. Estatal de Elecciones*, 110 DPR 400, 409 (1980) citando a *Infante v. Tribl. Examinador Médicos*, 84 DPR 308 (1961). A tono con ese principio, el Código Civil de 2020 dispone en su Art. 16, 31 LPRA sec. 5335, que "los actos

---

[16] Art. 19 (b) de la Ley Núm. 109-1962, *supra,* 27 LPRA sec. 1106.

ejecutados contra lo dispuesto en las leyes imperativas y las prohibitivas son nulos, salvo que se establezca otro efecto".

Por ello, en variadas ocasiones hemos reiterado que no queda al arbitrio de las agencias el deber de cumplir cabalmente con sus reglamentos y de reconocer los derechos allí contenidos. Es decir, **las agencias administrativas están obligadas a observar las reglas y reglamentos que ellas mismas promulgan.** Una vez han adoptado una norma, deben cumplirla y aplicarla en la manera en que está concebida. *Asoc. Fcias. Com. v. Dpt. De Salud*, 156 DPR 105, 136-137 (2002); *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 81 (1999); *Montoto v. Lorie*, 145 DPR 30, 47 (1998).

Sobre la nulidad por violación al debido proceso, el profesor Hernández Colón ha señalado que: "el quebrantamiento del debido procedimiento de ley es un concepto mucho más amplio y puede haber tantas manifestaciones del mismo como principios del debido procedimiento existen y que se hayan quebrantado en un caso en especial". *López García v. López García*, 200 DPR 50, 62-63 (2018) citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, sec. 4807, pág. 408. Por ello, ante un planteamiento de violación al debido proceso de ley, corresponde dilucidar, en primera instancia, cuál es el procedimiento dispuesto por la ley aplicable.

Por tanto, una vez identificado dicho procedimiento, toda actuación de la agencia que contravenga sus reglamentos, ya sea en exceso de sus facultades o en incumplimiento de las

normas y reglamentos que la rigen, constituye una violación al debido proceso de ley.[17] En ese sentido, al enfrentarnos a una clara violación al debido proceso de ley por parte de una agencia administrativa en *Jta. Lic. Médica v. Cabral Jiménez*, 201 DPR 157, 169 (2018), cimentamos que: "la actuación nula es inexistente, por lo que no genera consecuencias jurídicas. Dicho de otro modo, 'lo nulo nunca tuvo eficacia alguna, nunca nació en derecho, nunca existió'". *Brown III v. J.D. Cond. Playa Grande*, 154 DPR 225, 239 (2001) citando a *Montañez v. Policía de P.R.*, 150 DPR 917, 921 (2000).

Por esto, ninguna persona puede ampararse en una actuación administrativa incorrecta o ilegal. *Santiago v. Depto. de la Familia*, 153 DPR 208 (2001). "[L]os errores administrativos no son susceptibles de crear intereses libertarios que activen la protección del debido proceso de ley. A estos efectos, hemos expresado en varias ocasiones que 'un error administrativo no crea un estado de derecho que obligue [a una] agencia ni impida su corrección'". *González v. E.L.A.*, 167 DPR 400, 413 (2006) citando a *Santiago v. Depto. de la Familia*, *supra*, pág. 218; *Magriz v. Empresas Nativas*, 143 DPR 63, 71 (1997).

---

[17] En el ámbito administrativo, hemos reconocido que el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales. *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 329 (2009). Esto obedece en gran medida a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos que le han sido delegados. *Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010). Sin embargo, se ha reiterado que el procedimiento adjudicativo administrativo debe de ser justo en todas sus etapas y **tiene que ceñirse a las garantías mínimas del debido proceso de ley, conforme al interés involucrado y a la naturaleza del procedimiento que se trate**. *Álamo Romero v. Adm. de Corrección, supra,* pág. 330; *López Vives v. Policía de P.R.*, 118 DPR 219, 231 (1987).

En armonía con lo anterior, hemos reiterado el principio de nulidad de las actuaciones administrativas. Así, en *FCPR v. ELA et al.*, 211 DPR 521 (2023), este Tribunal reafirmó que **"[l]as actuaciones administrativas deben ajustarse al poder delegado y en ausencia de un mandato legislativo expreso o implícito, aquella actuación administrativa que no obedezca el poder conferido sería una actuación *ultra vires* de la agencia y, por ende, nula"**. *Íd*, pág. 536 citando a *Raimundi v. Productora*, 162 DPR 215, 228 (2004). Véanse, además, *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 560 (2014); *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743 (2003)[18].

### III

Como punto de partida, el peticionario argumenta que, en la tramitación de la solicitud presentada por Liquids, el Negociado transgredió las disposiciones de la Ley Núm. 109-1962, *supra*, y del Reglamento Núm. 9358-2022. Señala que, tanto el inciso (c) del Art. 16 de la Ley Núm. 109-1962, *supra*, como la Sección 3.287 del Reglamento Núm. 9358-2022, **le imponen al concesionario el peso de la prueba para demostrar que procedía el aumento tarifario solicitado.** Explica que, en contravención a lo anterior, surge del expediente administrativo que **Liquids no compareció a la vista pública celebrada el 1 de octubre de 2024**. Asegura que

---

[18] "El incumplimiento con los requisitos reglamentarios para una consulta de ubicación que conllevaba la rezonificación del predio vicia de nulidad dicha consulta y los permisos otorgados para el proyecto. Ni la Junta de Planificación ni los peticionarios pueden evadir el cumplimiento con las disposiciones legales mediante subterfugios nominales en contravención con la clara política pública que requiere la participación ciudadana en la planificación del país". *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743, 767 (2003).

el único documento en el expediente sobre esta compañía **es la solicitud, la cual no incluye prueba o justificación alguna para sostener el aumento solicitado.**

En cuanto a los comparecientes a la vista, arguye que del Informe rendido por la Oficial Examinadora surge que, durante la vista pública el deponente, Transporte Rosario, solo sometió copia de un contrato con la AAA del año 2012, dando a entender que, debido a dicho contrato, se puede extrapolar lo que conlleva realizar el servicio a nivel general. Apunta, además, que del Informe no surge que lo presentado en la vista pública haya sido considerado para la determinación del Negociado. **Aduce que lo que sostiene la resolución del Negociado es un estudio comisionado por esta entidad, previo a la solicitud que origina el caso de epígrafe.**

De este modo, alega que resulta inmaterial si la AAA compareció o no a la vista pública. Empero, argumentó que, aun si hubiese comparecido, no tenía obligación de presentar prueba que sostuviera la improcedencia del aumento solicitado, debido a que lo que la ley requiere es que la parte que solicita el aumento, en este caso Liquids, presentara prueba que convenciera al Negociado que era necesario el aumento. **Más, sin embargo, indicó que esto no ocurrió.**

Por otra parte, el peticionario apuntó que, el estudio en que se basó el Negociado para justificar su recomendación en el Informe para autorizar la "tarifa temporánea", **no fue**

**objeto de discusión en la vista ni se presentó al público para comentarios**. En consecuencia, sostiene que el Negociado no dio oportunidad a que la AAA o cualquier otra parte con interés, comentara sobre el estudio, del cual se desconocía su existencia. Por eso, alega que, para todos los fines prácticos, la determinación del Negociado, confirmada por el foro apelativo, puso el peso de la prueba en la AAA, lo cual es contrario a la Ley Núm. 109-1962, *supra*. Por tanto, razonó que el proceso para la aprobación del aumento solicitado incumple con la ley y el reglamento.

En la alternativa, argumenta que, de partirse de la premisa que el estudio fuera suficiente para aprobar la "tarifa temporánea" bajo la solicitud en controversia, afirmó que la realidad es que el proceso que siguió el Negociado para aprobarla es contrario a lo dispuesto en la Ley Núm. 109-1962, *supra*. En específico, señala que la *Resolución y Orden* del 2 de diciembre de 2024, resolvió la referida solicitud, es decir, que el proceso de evaluar la solicitud de Liquids ya culminó con la notificación de la *Resolución y Orden*, por lo que no cabe hablar de la imposición de una "tarifa temporánea". Sobre el particular, señala que la Ley Núm. 109-1962, *supra*, dispone que las *"tarifas temporáneas"* solo proceden cuando se aprueban para que rijan, mientras el proceso de adoptar una nueva tarifa o enmendar la misma se lleva a cabo, según las disposiciones del Art. 19 de la misma ley, *supra*, y la Sección 3.285 del Reglamento Núm. 9358-2022. Por ello, entiende que este no es el caso para el aumento

aprobado por el Negociado, ya que al haber culminado el proceso de solicitud instado por Liquids, la tarifa impuesta se convierte en un aumento **de carácter permanente**, no temporero, máxime cuando el Negociado no estableció una fecha para la duración de su implementación.

Por tanto, la AAA razonó que la adopción de estas tarifas utilizando la solicitud de una compañía que no presentó evidencia sustancial junto con su solicitud, lo cual tampoco hicieron los que comparecieron a la vista, **es un subterfugio de parte del Negociado para no cumplir con sus propias leyes y reglamentos**. Lo anterior por haber utilizado un documento que fue comisionado y recibido, previo a la solicitud y que no pudo ser controvertido durante el proceso, ya que este no fue parte de la evidencia sustancial que le competía someter a Liquids, ni se le proveyó al público para la correspondiente evaluación y análisis. Así, arguye que el Art. 56 de la Ley Núm. 109-1962, *supra*,[19] faculta a este Foro para revocar las

---

[19] El Art. 56 de la Ley Núm. 109-1962, *supra*, dispone:
> **Si el tribunal, luego de examinar el récord administrativo, declara que la decisión de la cual se solicita revisión es razonable y está de acuerdo con la ley, dictará un decreto desestimando la petición de revisión y confirmando la decisión de la Comisión.** Si por el contrario, el tribunal declara que [e]sta es irrazonable o que está fundada en evidencia insuficiente que materialmente le afecta o que de otro modo no está de acuerdo con la ley, podrá dictar un decreto final revocándola, o a su discreción, puede devolver los autos a la Comisión, con instrucciones de que reconsidere el asunto y se dicte la decisión que fuere razonable y de acuerdo con la ley. En caso de que el tribunal revocare una decisión de la Comisión desestimando una querella después de investigación y audiencia celebrada ante la Comisión, devolverá el récord administrativo del procedimiento a la Comisión con instrucciones de que acepte la querella, proceda a celebrar nueva audiencia o investigación y dicte la decisión que fuera razonable y de acuerdo con la ley. Al dictar cualquier decreto final en cualquier solicitud de revisión, el tribunal tendrá poder para imponer el pago de las costas al recurrente. (Negrillas suplidas). 27 LPRA sec. 1267.

determinaciones del Negociado cuando estas no cumplen con la ley. Adelantamos, que a la AAA le asiste la razón. Veamos.

Como indicáramos, el debido proceso de ley en el ámbito administrativo obliga a las agencias gubernamentales actuar de manera justa, razonable y dentro del marco legal y así evitar determinaciones arbitrarias como ocurrió en este caso. Por lo cual, repasamos, que en el procedimiento de adjudicación las agencias vienen obligadas a poner en vigor: las Constituciones de los Estados Unidos y Puerto Rico, la LPAU, la ley habilitadora y sus propios reglamentos. Incluso, cuando en sus reglas y reglamentos concedan derechos de relevante importancia que van más lejos que los requerimientos constitucionales y estatutarios, la agencia está compelida a observarlos, reconocerlos y ponerlos en vigor. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3.a ed. rev., Colombia, Ed. Legis S.A., 2013, págs. 171-172. [20]

En consecuencia, del derecho antes consignado, se desprende que el procedimiento adjudicativo ante el Negociado debe regirse por las leyes y reglamentos aplicables; y no existe espacio para actuaciones improvisadas ni contrarias a los procedimientos establecidos. Por consiguiente, cuando el Negociado se enfrente a una solicitud de cambio tarifario por parte de una entidad, corresponderá a esta última el peso

---

[20] Así lo hemos establecido en *Torres v. Junta Ingenieros*, 161 DPR 696 (2004), al igual que el Tribunal Supremo de los Estados Unidos en *U.S. V. Nixon*, 418 U.S. 683, 694-696 (1974).

probatorio para demostrar que, en efecto, existe la necesidad de dicho aumento. Así, que los reglamentos y procedimientos adoptados por una agencia que no sean contrarios a la LPAU, tendrán que cumplirse como parte del debido proceso de ley.

No obstante, en el caso de marras, esto no ocurrió. Del expediente y del propio *Informe de la Oficial Examinadora* se desprende que, en abril de 2024, **a solicitud del Negociado**, la firma Advantage Business Consulting realizó un análisis con el propósito de estimar los ingresos y costos de una operación de acarreo de agua, así como de evaluar las ganancias potenciales, a fin de determinar si las tarifas vigentes ameritaban un aumento. Dicho estudio, **preparado por una entidad que no representaba a ninguna de las partes en el procedimiento adjudicativo y realizado previo al inicio de este**, fue utilizado por el Negociado para subsanar la carga probatoria del solicitante y finalmente aprobar el aumento tarifario solicitado por Liquids. Esto, **en contravención evidente al debido proceso de ley que establece el Reglamento Núm. 9358-2022.**

De un análisis minucioso del expediente se desprende que Liquids no cumplió con su obligación de probar la necesidad del aumento tarifario, conforme a la Sección 3.287 del Reglamento Núm. 9358-2022. En específico, Liquids no proveyó información alguna que justifique su petición. Ante tal ausencia, el Negociado arguye que la prueba de Liquids era innecesaria, toda vez que: (1) se trata de una tarifa temporánea y (2) que, a pesar de que Liquids no compareció

en el proceso de adopción de tarifas, otras entidades sí comparecieron y defendieron la posición que hubiese asumido la querellante.[21] Sin embargo, como ya hemos reseñado, del expediente surge que la única deposición en la vista pública fue la del Sr. Rosario Merced que, según lo estipulado por la Oficial Examinadora, solo proveyó un resumen del funcionamiento y requisitos de su industria. Dicho testimonio, según estipulado por la Oficial Examinadora, se limitó a describir su operación, sin proveer referencia alguna de costos, números o evidencia cuantificable que hubiera podido ser utilizada razonablemente para justificar un aumento general y cumplir con la carga probatoria del solicitante. Debido a ello, la Oficial Examinadora dispuso en su recomendación que, "se puede conceder un aumento de las tarifas de transporte de agua en tanque **mediante la adopción de tarifas temporáneas de acuerdo con lo recomendado en el estudio intitulado *Revisión de Tarifas de Acarreo de Agua en Puerto Rico 2024*".[22]

En otras palabras, el Negociado **aprobó un aumento tarifario general**, sin que el solicitante cumpliera con su carga probatoria, **y sustentó su determinación exclusivamente en un estudio que no fue presentado por las partes ni sometido a examen en la vista pública.** El resultado neto de la actuación del Negociado constituye una crasa violación al debido proceso de ley que establecen los estatutos aplicables

---

[21] Ap., pág. 121.
[22] Ap., pág. 56. Véase, también, Resolución y Orden, Ap., pág. 43.

y que van en detrimento del pueblo. Reiteramos que las agencias administrativas tienen que ser garantes del cumplimiento de sus leyes y reglamentos aplicables y evitar actuaciones *ultra vires* como ocurrió en este caso. Las garantías al debido proceso de ley otorgadas por vía constitucional, estatutaria o reglamentaria **no son opcionales** y más cuando la controversia, como la que hoy nos ocupa, incide sobre el aumento del costo de servicios esenciales de nuestros constituyentes.

## IV.

Por los fundamentos antes expuestos, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se declara nula la *Resolución y Orden* emitida por el Negociado, por ser contraria a la ley y reglamentos aplicables.

Se dictará Sentencia en conformidad.

Camille Rivera Pérez
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Liquids and Water Transport<br><br>Recurrido<br><br>v.<br><br>Autoridad de Acueductos y Alcantarillados de Puerto Rico<br><br>Peticionaria<br><br><br>Negociado de Transporte y Otros Servicios Públicos<br><br>Recurrida | CC-2025-0366 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 6 de julio de 2026.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se declara nula la *Resolución y Orden* emitida por el Negociado, por ser contraria a la ley y reglamentos aplicables.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una opinión de conformidad. El Juez Asociado señor Colón Pérez concurre sin opinión escrita.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Liquids and Water Transport<br><br>Recurrido<br><br>v.<br><br>Autoridad de Acueductos y Alcantarillados de Puerto Rico<br><br>Peticionaria<br><br>Negociado de Transporte y Otros Servicios Públicos<br><br>Recurrida | CC-2025-0366 | *Certiorari* |

Opinión de conformidad emitida por el Juez Asociado Señor Estrella Martínez

En San Juan, Puerto Rico, a 6 de julio de 2026.

Estoy conforme con la *Opinión* emitida por este Tribunal y, por la naturaleza *sui generis* de la controversia de Derecho Administrativo que nos ocupa, estimo adecuado expresarme en sintonía con lo pautado. Ello, por resultar pertinente precisar respecto a la distinción entre los procedimientos para la modificación de las tarifas de los servicios públicos que regula el Negociado de Transporte y otros Servicios Públicos (Negociado) cuando estos son iniciados por el propio Negociado y cuando son promovidos por un concesionario, según lo dispuesto en los Arts. 16 y 17 de la Ley de

Servicio Público de Puerto Rico, *infra*, y el Código de Reglamentos del Negociado de Transporte y Otros Servicios Públicos, Reglamento Núm. 9358 de 7 de febrero de 2022 (Reglamento Núm. 9358). Ciertamente, el debido proceso de ley es la base fundamental sobre la cual se sostienen ambos ámbitos de acción. Las deficiencias en uno de ellos no pueden subsanarse intentando complementarse parcialmente con el otro curso de acción viable en ley. Me explico.

**I.**

De entrada, conviene repasar la base legal y reglamentaria aplicable a la controversia de autos. En primer término, el Art. 16 de la Ley de Servicio Público de Puerto Rico, Ley Núm. 109 de 28 de junio de 1962 (Ley de Servicio Público de Puerto Rico), 27 LPRA sec. 1103, dispone que:

> Artículo 16. — Nuevas Tarifas o Cargos; Suspensión.
>
> (a) Debe solicitarse del [Negociado] que se apruebe por éste toda tarifa nueva o modificación de tarifa. El [Negociado] deberá publicar un aviso en un periódico de circulación general en Puerto Rico, así como en su portal de internet, y ofrecer a todas las partes afectadas una oportunidad adecuada de ser oídas en los procedimientos que llevase a cabo para determinar si procede o no la solicitud. El [Negociado] podrá dictar la orden que fuere adecuada como si se tratara de un procedimiento originado de acuerdo con el Artículo 17 de esta Ley. […]
>
> (b) El [Negociado], al determinar o prescribir tarifas justas y razonables estará facultado para considerar entre otras cosas, el grado de

eficiencia, suficiencia y adecuacidad de las facilidades disponibles y de los servicios prestados. Podrá considerar, además, el valor de tales servicios para el público y el potencial de una compañía de servicio público para mejorar dichas facilidades y servicios. Sujeto a lo estipulado en el inciso (a) de esta Sección, el [Negociado] concederá un rédito justo y razonable sobre la base tarifaria justa y razonable que se determine y prescriba para una compañía de servicio público.

(c) En cualquier procedimiento tarifario, la compañía de servicio público o porteador por contrato concernido, tendrá el peso de la prueba. (Subrayado suplido).

En cuanto a las solicitudes relacionadas con las tarifas de los servicios públicos que regula el Negociado, resultan pertinentes las siguientes disposiciones del Reglamento Núm. 9358, *supra*:

Sección 3.284: Debe solicitarse del Negociado que se apruebe por éste toda tarifa nueva o modificación de tarifa. De acogerse la solicitud de tarifa nueva, o modificación de tarifa, se tiene que incorporar al presente Código de Reglamentos mediante enmienda al mismo. El [Negociado] deberá publicar un aviso en un periódico de circulación general en Puerto Rico, así como en su portal de internet, y ofrecer a todas las partes afectadas una oportunidad adecuada de ser oídas en los procedimientos que llevase a cabo para determinar si procede o no la solicitud.

[…]

Sección 3.287: En cualquier procedimiento tarifario, el concesionario concernido tendrá el peso de la prueba, salvo sea un procedimiento iniciado por el propio Negociado.

Sección 3.288: La Solicitud de Aumento de Tarifas deberá presentarse a través de la Plataforma Digital, pagando el arancel correspondiente. La solicitud deberá detallar los servicios para los cuales se solicita el aumento de tarifas, las tarifas actuales, las

<u>tarifas propuestas y la justificación para el aumento</u>. El Negociado podrá ordenar a los peticionarios que paguen los gastos y honorarios por servicios profesionales y consultivos incurridos en las investigaciones, audiencias o cualquier otro procedimiento que se lleve a cabo con relación al ajuste de tarifas solicitado. (Subrayado suplido).

En resumen, del Art. 16 y de las secciones pertinentes del Reglamento Núm. 9358 antes citadas surge que toda empresa interesada en que se modifique la tarifa de los servicios que presta debe: (1) presentar una solicitud ante el Negociado para que este la evalúe, específicamente a través de la Plataforma Digital del Negociado y mediante el pago del arancel correspondiente; (2) detallar en la solicitud los servicios para los cuales se solicita el aumento tarifario (como, por ejemplo, el transporte de acarreo de agua en este caso), las tarifas actuales, las tarifas propuestas y la justificación para el aumento; (3) una vez recibida la solicitud, el Negociado debe publicar un aviso en un periódico de circulación general en Puerto Rico y en su portal de internet; y (4) brindar a todas las partes afectadas una oportunidad adecuada para ser escuchadas durante el procedimiento mediante el cual se determina si procede la solicitud.

En ese procedimiento tarifario, iniciado al amparo del Art. 16, *supra*, la compañía de servicio público o el porteador por contrato concernido <u>tendrá el peso de la prueba</u>. En la misma línea, la Sección 3.287 del Reglamento

Núm. 9358, *supra*, dispone que "[e]n cualquier procedimiento tarifario, el concesionario concernido tendrá el peso de la prueba, <u>salvo que se trate de un procedimiento iniciado por el propio Negociado</u>". (Subrayo suplido). **Con ello, tanto la ley como el reglamento distinguen quién asume el peso de la prueba en función de quien promueva el procedimiento tarifario, ya sea el propio Negociado o la parte interesada.**

Por otro lado, el Art. 17 de la Ley de Servicio Público de Puerto Rico, 27 LPRA sec. 1104, dispone:

> Artículo 17. — Poder para Prescribir Tarifas Justas y Razonables.
>
> (a) Cuando [el Negociado] considere que cualquier tarifa infringe alguna disposición de esta ley, o es irrazonable, determinará y prescribirá la tarifa justa y razonable que deberá exigirse. <u>En la fijación de las tarifas para porteadores públicos, [el Negociado] no tiene que considerar a éstos individualmente pudiendo basar sus determinaciones en la situación general de la actividad reglamentada.</u> [El Negociado] dará a todas las partes que pudieran ser afectadas por sus determinaciones bajo este Artículo la oportunidad de ser oídas.
>
> (b) Cualquier porteador público al cual se le esté pagando una tarifa que infringe alguna disposición de esta Ley, o se le prive de su contrato o se nieguen a contratarlo por intentar hacer valer la Ley, tiene derecho a ir ante el [Negociado] para exigir su cumplimiento conforme a las facultades dispuestas en el Artículo 20 o cualquier otra disposición de esta ley.
>
> (c) [El Negociado] dará a todas las partes que pudieran ser afectadas por sus determinaciones bajo los incisos (a) y (b) una oportunidad de ser oídas. (Subrayado suplido).

Ante esa realidad, en este caso, coincido en que el Negociado no puede suplir *motu proprio* la carga probatoria que recae sobre el solicitante al atender la solicitud de aumento de tarifas al amparo de la Ley de Servicio Público de Puerto Rico porque nos encontramos ante un procedimiento que no fue iniciado por el Negociado. En efecto, la Ley de Servicio Público de Puerto Rico y el Reglamento Núm. 9358, *supra*, reconocen dos tipos de procedimientos tarifarios ante la agencia: (1) los procedimientos tarifarios iniciados por el propio Negociado y (2) las solicitudes de aumento tarifario promovidas por los concesionarios. Por ello, cuando un concesionario solicita un aumento tarifario, le corresponde a este justificar las razones por las cuales el Negociado debe aprobar la modificación de las tarifas.

El curso procesal descrito en la *Opinión* de este Tribunal y que obra en el expediente revela que el concesionario que solicitó el aumento tarifario no cumplió con justificar las razones por las cuales el Negociado debía aprobar la modificación de las tarifas. Específicamente, el 2 de julio de 2024, el Negociado recibió a través de su plataforma en línea una solicitud de Liquids and Water Transport (Liquids) para aumentar las tarifas del servicio de acarreo de agua. En concreto, Liquids solicitó la revisión y posterior aumento de las tarifas aplicables a los servicios de transporte de agua

que presta a través de la isla de Puerto Rico. El 11 de septiembre de 2024, el Negociado publicó un aviso en *Primera Hora* y en la página de *Facebook* del Negociado sobre la petición presentada por Liquids, así como la fecha de la vista pública que se celebraría para atenderla. También advirtió que las personas interesadas en deponer podrían solicitarlo dentro de los diez (10) días calendario siguientes a la publicación, enviando un correo electrónico a una dirección provista. A través del mismo medio, cualquier persona interesada en presentar comentarios escritos podía hacerlo dentro de los treinta (30) días calendario siguientes a la publicación.

Además, el 25 de septiembre de 2024, el Negociado notificó por correo electrónico ese aviso a la Autoridad de Acueductos y Alcantarillados (AAA), así como la fecha de la vista pública a celebrarse y la solicitud que presentó Liquids, por ser la entidad que resultaría afectada de concederse el aumento.

El 1 de octubre de 2024, se celebró la vista pública. <u>Sin embargo, Liquids no compareció ni tampoco la AAA.</u> Esta última agencia tampoco radicó una solicitud para deponer ni envió comentarios escritos. Otras compañías de transporte de agua comparecieron y solo dos depusieron, el Sr. Félix Rosario Merced, presidente de Transporte Rosario, Inc., y el Sr. Edwin Marrero Martínez, en calidad de presidente de la Asociación de Camioneros de Arrastre.

El señor Rosario Merced explicó la complejidad del servicio de acarreo de agua potable en tanque, cómo se lleva a cabo la operación diaria y los requisitos que se les exigen a los concesionarios para brindar tales servicios, entre otros asuntos similares. Además, sometió para inclusión en el expediente un contrato con la AAA, fechado el 21 de agosto de 2012, titulado "*Pedido Contra Contrato.*"

Posteriormente, el 21 de noviembre de 2024, la Oficial Examinadora asignada al caso recomendó al Negociado aprobar el aumento de las tarifas de acarreo de agua. Así, en su *Informe de la Oficial Examinadora* (Informe) expresó:

> Evaluado el expediente, por entender que redunda en el provecho público, se puede conceder un aumento de las tarifas de transporte de agua en tanque mediante la adopción de tarifas temporeras de acuerdo con lo recomendado en el estudio titulado *Revisión de Tarifas de Acarreo de Agua en Puerto Rico 2024, en cumplimiento con el derecho aplicable.*

En efecto, se trata de un estudio que el propio Negociado había solicitado a una empresa privada en abril de 2024 sobre la revisión de tales tarifas, es decir, meses antes de la presentación de la solicitud de aumento tarifario de Liquids.

El 2 de diciembre de 2024, el Negociado emitió una *Resolución y Orden* en la que acogió en su totalidad el Informe de la Oficial Examinadora. Uno de sus fundamentos consistió en la recomendación del estudio titulado

*Revisión de Tarifas de Acarreo de Agua en Puerto Rico 2024*…. Ahora bien, en la vista pública celebrada, ese estudio no fue compartido ni discutido con las partes, ni siquiera se presentó al público para comentarios. Ahí es donde estriba, a mi juicio, uno de los principales escollos para sostener la *Resolución y Orden* del Negociado. Aun bajo el criterio más flexible que avalara una fusión de ambas modalidades de revisión tarifaria, se aflora un cuadro en el que no se cumplieron cabalmente las garantías y requerimientos propios de un proceso cuasi judicial ni de una modalidad cuasi legislativa.

En ese sentido, no puede ignorarse que, por un lado, el procedimiento de revisión o modificación de tarifas tiene naturaleza cuasi judicial, particularmente cuando se activa a solicitud de un concesionario, ya que debe brindarse oportunidad a las partes de ser escuchadas, objetar el proceso y que la decisión se fundamente en el expediente administrativo. Por otro lado, una vez la determinación de aumento de tarifa adviene final y firme, la tarifa adoptada debe incorporarse al reglamento vigente mediante la correspondiente enmienda, etapa que reviste un carácter reglamentario y, por ende, cuasi legislativo. Véase la Sección 3.284 del Reglamento Núm. 9358, *supra*. En consecuencia, deben cumplirse las garantías y requisitos de ley para ambas fases, según reconocido por nuestro Derecho Administrativo.

Con ello, considero que no estamos limitando la facultad del Negociado para modificar las tarifas sin necesidad de que una parte interesada presente una solicitud para ello. Ciertamente, el Negociado puede iniciar un proceso de revisión tarifaria por su propia iniciativa. Ello se desprende del propio texto del Art. 17(a), *supra*, el cual le confiere la facultad de prescribir tarifas justas y razonables y dispone que, al fijarlas, no tiene que considerar individualmente a cada porteador público, sino que puede fundamentar sus determinaciones en la situación general de la actividad reglamentada. En otras palabras, el Negociado puede actuar en atención al interés público y a las condiciones generales del sector regulado.

Asimismo, la Sección 3.287 del Reglamento Núm. 9358, *supra*, dispone que, en cualquier procedimiento tarifario, el concesionario concernido tendrá el peso de la prueba, salvo que se trate de un procedimiento iniciado por el propio Negociado. Esa excepción evidencia que el Reglamento mismo reconoce una distinción entre los procedimientos iniciados por un concesionario y aquellos iniciados por el Negociado, dejando claro que este último puede iniciar tales procesos. En estos últimos, la carga probatoria no recae sobre el concesionario concernido. **No obstante, el ejercicio de esa facultad debe ajustarse al procedimiento establecido por la ley.** Me explico.

Cuando una parte presenta una solicitud de aumento de tarifa, el procedimiento aplicable es el establecido en el Art. 16 de la Ley de Servicio Público de Puerto Rico, *supra*. En ese caso, la parte solicitante tiene la carga de presentar prueba que demuestre la necesidad del aumento. En el asunto de epígrafe, la parte que sometió la solicitud a través del sistema, Liquids, no compareció a la vista. Por su parte, la compañía compareciente, Transporte Rosario, Inc., explicó la complejidad del servicio de acarreo de agua potable en tanque, cómo se lleva a cabo la operación diaria, y los requisitos que se les exigen a los concesionarios para brindar tales servicios a la AAA, entre otros temas similares. Además, presentó un contrato con la AAA del 21 de agosto de 2012. Ahora bien, de las determinaciones realizadas por la Oficial Examinadora en su Informe, no surge que, en la vista, se hayan ofrecido cifras específicas sobre gastos y costos de la actividad de transporte de acarreo de agua potable, sino que únicamente consta que se discutieron aspectos generales acerca de los costos y gastos operacionales del concesionario por medio del representante de Transporte Rosario, Inc. Sin embargo, el procedimiento fue iniciado por Liquids, quien no compareció a la vista pública.

Asimismo, la Oficial Examinadora fundamentó gran parte de su determinación en un estudio que no formó parte

del expediente administrativo, el cual fue utilizado particularmente para la imposición de tarifas temporáneas, sin que las partes afectadas fueran oídas respecto de ese estudio, según lo exige el estatuto aplicable. Por tanto, aun bajo una interpretación flexible que validase un procedimiento híbrido, tendría que observarse el debido proceso de ley, otorgando a todas las partes, tanto a las potencialmente beneficiadas como, en mayor medida, a las afectadas, una oportunidad adecuada para ser oídas.

Por tanto, reitero que no se trata de que el Negociado no pueda ejercer su poder regulador e iniciar, por razones de interés público, un proceso de ajuste de tarifas sin depender de la solicitud de un proveedor o concesionario. Más bien, la situación plantea un problema distinto: el procedimiento se inició a solicitud de un concesionario, mientras que el Negociado aparentemente ya tenía la intención de iniciar un proceso por su propia cuenta, pues había solicitado el estudio previo a la presentación de la solicitud de Liquids. No obstante, cuando el procedimiento se inicia a instancia de parte, es esta la que tiene el peso de la prueba, según el Art. 16, *supra*.

En ese contexto, si el Negociado pretendía utilizar el estudio como fundamento para la determinación tarifaria, a mi juicio, debió iniciar un procedimiento nuevo al amparo del Art. 17(a), *supra*. **Alternativamente, si optaba por aprovechar el trámite ya iniciado por**

**Liquids por razones de economía procesal, debió asegurar las debidas garantías procesales, incluyendo la publicación del aviso correspondiente, <u>la divulgación del estudio</u> y la concesión de oportunidad a las partes interesadas para examinarlo y objetarlo.**

Las consecuencias de esas omisiones son importantes en el contexto de la participación ciudadana, pues

> no se puede adoptar una mirada formalista o restrictiva del texto y concluir que esta participación no va más allá del sometimiento de comentarios ante la agencia. Por el contrario, hay que establecer los mecanismos para garantizar el derecho a la participación. Esta visión es cónsona con el hecho de que *cualquier* persona afectada por la aplicación de una regla o reglamento aprobado por una agencia puede impugnar su validez constitucional, en cualquier momento, ante el Tribunal de Primera Instancia. L.F. Estrella Martínez, *Acceso a la Justicia: Derecho Humano Fundamental*, Sec. 7.2, pág. 192, citando a E. Fontánez Torres, *El derecho a participar: Normas estudios de caso y notas para una concreción,* 68 Rev. C. Abo. PR 631, 632 (2007).

Al no hacerlo, como correctamente argumentó la AAA, se utilizó un documento que fue comisionado y recibido, previo a la solicitud de Liquids, el cual no pudo ser controvertido durante el proceso, ya que no fue parte de la evidencia sustancial que le competía someter a Liquids ni fue expuesto al público para su correspondiente evaluación y análisis.

Así, coincido con la *Opinión* en cuanto expresa que el estudio, preparado por una entidad que no representaba a ninguna de las partes en el procedimiento adjudicativo

y realizado previo al inicio del mismo, fue utilizado por el Negociado para subsanar la carga probatoria del solicitante y, finalmente, aprobar el aumento tarifario solicitado por Liquids, en contravención al debido proceso de ley y los procedimientos que establece la Ley del Servicio Público de Puerto Rico y el Reglamento Núm. 9358.

Respecto a esto último, como es sabido, las agencias administrativas están obligadas a observar su ley habilitadora, así como las reglas y reglamentos que ellas mismas promulgan. Una vez adoptan una norma, deben cumplirla y aplicarla conforme a su propio texto y alcance. *Asoc. Fcias. Com. v. Depto. de Salud*, 156 DPR 105, 136-137 (2002); *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 81 (1999).

En este caso, el propio Art. 17(a) exige que se les brinde una oportunidad adecuada para ser oídas a todas las partes que puedan resultar afectadas por una determinación. Por ello, a mi entender, si el Negociado pretendía basar el aumento tarifario en el estudio que había solicitado previamente, debió iniciar un procedimiento al amparo del Art. 17(a) o, en la alternativa, divulgar el estudio y garantizar a las partes la oportunidad de examinarlo y objetarlo antes de utilizarlo como fundamento para su determinación, especialmente para incorporar con carácter permanente las nuevas tarifas.

Por lo expuesto, estoy conforme con la *Opinión* emitida por este Tribunal.


Luis F. Estrella Martínez
Juez Asociado